**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

BRYAN MCCLURKIN,

                  Plaintiff,

    v.

MICHAEL SITLER, Shield #1337, and RONALD
MAIORINO, Shield #1112,

                Defendants.

15-CV-05685 (NRM) (LGD)

**ORAL ARGUMENT**
**REQUESTED**

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR SPOLIATION SANCTIONS**

COVINGTON & BURLING LLP
Seema Sabu
Kyle Chow
Destinee Haller
30 Hudson Yards
New York, NY 10001
(212) 841-1000

*Counsel for Plaintiff*

**Table of Contents**

PRELIMINARY STATEMENT.................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.    The Video Evidence Existed. ............................................................................. 2

    II.    Suffolk County Had a Duty to Preserve the Video Evidence. ............................... 6

    III.    Suffolk County Did Not Take Reasonable Steps to Preserve the Video Evidence.............................................................................................................. 9

        A.    Defendants Have Not Shown Any Steps Taken To Preserve the Videos After Receiving Notice of Potential Future Litigation.................... 9

        B.    The "Culpable State of Mind" Standard is Not Part of the Spoliation Analysis. .................................................................................. 10

    IV.    There is No Replacement for the Spoliated Video Evidence.............................. 10

    V.    Suffolk County's Conduct Must be Imputed to Defendants. ............................... 11

    VI.    The Loss of The Videos Prejudices Mr. McClurkin. .......................................... 13

    VII.    Mr. McClurkin is Entitled to an Adverse Inference at Trial. .............................. 15

CONCLUSION...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Castro v. Smith*,
   2023 WL 5371311 (S.D.N.Y. Aug. 22, 2023) ................................................................. *passim*

*CAT3, LLC v. Black Lineage, Inc.*,
   164 F.Supp.3d 488 (S.D.N.Y. 2016) .................................................................................6

*Dilworth v. Goldberg*,
   3 F. Supp. 3d 198 (S.D.N.Y. 2014) ..................................................................................3

*ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*
   144 F.4th 360, 374 (2d Cir. 2025) ..................................................................................10

*Hoffer v. Tellone*,
   128 F.4th 433 (2d Cir. 2025) ..........................................................................................15

*Hughes v. City of New York*,
   2021 WL 4295209 (S.D.N.Y. Sep. 21, 2021)...................................................................10

*Khaldei v. Kaspiev*,
   961 F. Supp. 2d 564 (S.D.N.Y. 2013)................................................................................6

*Kronisch v. United States*,
   150 F.3d 112 (2d Cir. 1998)............................................................................................13

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
   2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) .............................................................11, 14

*McCoy v. TJX Cos., Inc.*,
   2024 WL 4212194 (2d Cir. Sep. 17, 2024)......................................................................15

*Milton v. Rehman*,
   2025 WL 2625966 (S.D.N.Y. July 31, 2025) ..............................................................11, 12

*Oakley v. MSG Networks, Inc.*,
   792 F. Supp. 3d 377 (S.D.N.Y. 2025)..............................................................................15

*Ocasio v. City of Canandaigua*,
   2025 WL 1064721 (W.D.N.Y. Ap. 9, 2025) ............................................................12, 13, 14

*Resnick v. Coulson*,
   2019 WL 1434051 (E.D.N.Y. March 30, 2019) ..................................................................6

*Stanbro v. Westchester Cnty. Health Care Corp.*,
    2021 WL 3863396 (S.D.N.Y. Aug. 27, 2021) ........................................................8, 9, 10, 12

*Tri-County Motors Inc. v. Am. Suzuki Motor Corp*,
    494 F. Supp. 2d 161 (E.D.N.Y. 2007) .................................................................................6

*Ungar v. City of New York*,
    329 F.R.D. 8 (E.D.N.Y. 2018) ......................................................................................6, 10

*Usavage v. Port Auth. of New York & New Jersey*,
    932 F. Supp. 2d 575 (S.D.N.Y. 2013) ...............................................................................15

*Vega v. Broome Cnty.*,
    2023 WL 6318919 (N.D.N.Y. Sept. 28, 2023) .........................................................8, 10, 11

**Other Authorities**

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ...........................................14

## PRELIMINARY STATEMENT

The Court should grant Plaintiff Bryan McClurkin's motion for spoliation sanctions for Defendants' decade-long failure to produce videos showing the excessive force incident that underlies Plaintiff's claims in this action. Defendants' opposition glosses over and mischaracterizes many of the facts and arguments asserted in the motion, but it does not rebut the fact that spoliation sanctions are warranted here.

Defendants make two main arguments: First, Defendants argue that overhead surveillance video capturing the May 8, 2015 force incident was automatically overwritten prior to when Suffolk County had notice of potential litigation, which Defendants argue occurred by July 13, 2015, when the Internal Affairs Bureau received notice of Mr. McClurkin's complaints. But as detailed in Plaintiff's Motion for Spoliation Sanctions (the "Motion") and *infra*, Suffolk County had notice of potential litigation well within the 30-day period in which such videos were retained before being automatically deleted. Notice occurred in several ways, and the County has even demonstrated its own notice by selectively and affirmatively preserving other overhead videos subject to the same deletion policy. Those videos show Mr. McClurkin's movements on the very same day, directly before and after the force incident. Defendants' claim that those videos just happened to still be available on July 13, 2015 is not credible; Suffolk County's Rule 30(b)(6) witness confirmed in his deposition testimony that the videos would not have been available within that timeframe without being affirmatively preserved.

Second, Defendants argue that the handheld video never existed. But they cannot deny that in *contemporaneous* documentation from the day of the force incident, Lt. Dan McKenna confirmed on the official incident report form that the video had been secured in an evidence locker. Although statements dated one week after the incident sought to retreat from this admission, the circumstances surrounding the subsequent statements demonstrate why they should

not be credited.  They were made on the same day Mr. McClurkin was transferred to a hospital in connection with his shoulder dislocation, and Suffolk County failed for years to produce the statements in discovery despite numerous demands for video evidence.

Defendants' other arguments similarly fail.  Plaintiff has proven all of the threshold requirements for spoliation sanctions to apply under Rule 37(e).  Suffolk County's control and conduct concerning the videos must be imputed to Defendants, consistent with what courts across this Circuit have done in similar circumstances, and spoliation remedies would be "felt most acutely" by Suffolk County.  Moreover, the loss of the videos has prejudiced Plaintiff in this litigation, and Plaintiff has shown that Suffolk County intended to deprive him of the videos.  As such, sanctions up to and including an adverse inference are warranted.

In short, the opposition brief does nothing to undercut the key facts and arguments detailed in Plaintiff's Motion.

## ARGUMENT

### I. The Video Evidence Existed.

Plaintiff has shown by at least a preponderance of the evidence that video evidence of the May 8, 2015 force incident existed.

First, with respect to overhead surveillance videos, for the reasons explained in the Motion, *see* Mot. at 6–8 (citing, *e.g.*, Mot. Ex. 9 (Corrections Directive 3.1.160), at 3; Mot. Ex. 11 (Dep. Tr. of Captain James Zahn), at 36:25), Defendants cannot and do not dispute that the continuously recording overhead surveillance cameras at Yaphank Correctional Facility captured the area outside the Booking cells, which includes outside Booking Cell No. 4 where Mr. McClurkin was held, *see* Defs.' Opp., Dkt. No. 278 (hereinafter, "Opp."), at 14.  Instead, they argue that extractions generally take place inside of cells, and as such, overhead surveillance videos may not have captured the force incident at issue here.  This ignores the evidence in this case, which makes clear

2

that the Defendants' use of force occurred directly *outside* Booking Cell No. 4 and therefore was captured by overhead cameras.

In the incident report form, two different "sworn" officers[1]—McKenna and Kevin Flaherty—described that while Mr. McClurkin was inside Booking Cell No. 4 on May 8, 2015, the SERT team (including Defendants) "handcuffed [Mr. McClurkin] behind his back *through the [door's] food slot,*" and Mr. McClurkin was "*led out of his cell* by C/Os Maiorino#1112 and Sitler #1337 and placed in the restraint chair." *See* Mot. Ex. 1, at 1 (emphases added); *see also id.* at 2.

Defendants, as well as Flaherty and McKenna, also testified in their depositions that the events occurred entirely outside the Booking cell door. *See* Opp. Ex. J (278.11), at 39:5–16 (Flaherty testifying that the restraint chair was directly outside of the cell in order to move Mr. McClurkin "immediately from the cell to be put in the restraint chair"); Opp. Ex. K (278.12), at 29:17–30:25 (Ronald Maiorino); Opp. Ex. L (278.13), at 30:18–31:7 (Michael Sitler); Opp. Ex. N (278.15), at 40:17–25 (McKenna). Flaherty confirmed that overhead surveillance videos would have captured all of the events outside the Booking cells, including officers handcuffing Mr. McClurkin through the food slot, leading him out of the cell, and restraining him into the restraint chair. Opp. Ex. J (278.11), at 41:22–43:16; *see also* Mot. Ex. 20, at 47:19–48:10 (McKenna acknowledging overhead camera "would have caught the movement" of Mr. McClurkin being brought out of the cell).

This case is very different from the case cited by Defendants, *Dilworth v. Goldberg*, 3 F. Supp. 3d 198 (S.D.N.Y. 2014), in which facility plans indicated that surveillance cameras were not located in a particular location, and plaintiff merely offered speculative expert opinion testimony

---

[1] *See* Mot. at 5 (citing Mot. Ex. 17 (Directive No. 25-002), at 8) (the Sheriff's Office's policy required that official incident report forms be completed by a "sworn officer" when hands-on physical force is used).

that cameras "should have been" placed in the location.  Here, Suffolk County's Rule 30(b)(6) deponents and other officers confirmed that surveillance cameras captured any occurrences in the area outside of the Booking cells and, in accordance with policy, continuously recorded the area. *See* Mot. at 3.  As such, overhead cameras captured Defendants' use of force against Mr. McClurkin outside Booking Cell No. 4.

Second, the evidence shows by at least a preponderance of the evidence that the video from the handheld camera existed.  While Defendants attempt to minimize McKenna's signed statement in the incident report form stating that the handheld video had been secured in an evidence locker in the duty lieutenant's office, *see* Mot. at 3–4; Mot. Ex. 1, at 2, this official form is the *only* contemporaneous documentary evidence.  It was made on the very same day as the force incident, and McKenna understood that drafting an official incident report was the practice required when something unusual occurred, such as when a SERT team was used for a cell extraction.  *See* Opp. Ex. N (Dkt. No. 279.15), at 29:9–15, 30:16–20.

The May 15, 2015 statements by McKenna and Officer Mark Donahue, *see* Mot. Ex. 14 (the "McKenna-Donahue Statement"), which sought to retreat from the earlier statement and claimed that the video never existed, were made one week after the incident (and not contemporaneously, as Defendants argue).  The statements bear numerous hallmarks of a post-hoc fabrication, as explained in the Motion.  *See* Mot. at 14–15.  McKenna wrote in his statement that he "was in the process of editing [his] portion of the report . . . when C/O Donahue advised [him] of the lack of tape being loaded in the camera."  McKenna-Donahue Statement.  As such, McKenna purports to have falsely written in his sworn narrative that the video was secured in the evidence locker even though no video ever existed.  *See* Opp. Ex. N (Dkt. No. 278.15), at 44:17-45:7 ("I wrote the report prior to opening camera and seeing that there was a videotape missing").  And,

4

even when Donahue purportedly claimed that there was no tape, McKenna still failed to take any steps to correct his report. *See* McKenna-Donahue Statement. To say the least, this narrative strains credulity. *See Castro v. Smith*, 2023 WL 5371311, at \*7–8 (S.D.N.Y. Aug. 22, 2023) (finding that video evidence existed where reports indicated that an officer operated a handheld camera, in spite of a "report disclaiming the existence of 'surveillance' footage and a report one month after the Incident claiming that there is 'no footage to review'").

The circumstances in which the McKenna-Donahue Statement was made—and withheld for approximately a decade in this litigation—also erode its credibility. For instance, under his own narrative in the McKenna-Donahue Statement, McKenna knowingly wrote and signed his name to a false statement in the official incident report form and failed to report to his command structure what he now claims, namely, that there was no tape in the camera. If these events were true, it would be implausible that McKenna was not disciplined for making a false statement in official documentation. *See* Mot. at 6, 14. This further supports the truth of his original statement in the incident report form indicating the video existed.

Further, the self-serving nature of the McKenna-Donahue Statement is more apparent because it was made on the very same day Mr. McClurkin was transported to Peconic Bay Medical Center for evaluation in connection with a shoulder dislocation. *See, e.g.*, Mot. Ex. 8, at 3.

Additionally, if the McKenna-Donahue Statement were an accurate report concerning the handheld video, there would be no reason to hide it. But this is exactly what Suffolk County did for nine years of litigation: Despite Mr. McClurkin's numerous demands for video, *see* Mot. at 11 (citing Dkt. Nos. 30 ¶ 8; 39 ¶¶ 1–2, 4; 47; 48; 53 ¶ 4; 54 ¶¶ 3–5; 56; 60; 64 ¶¶ 1, 3, 7; 68 ¶¶ 1, 3; 71 ¶¶ 3, 5–6; 74; 76 ¶ 1; 79; 82 ¶¶ 1, 4–5; 83 ¶¶ 1–2, 6; 84 ¶ 2; 86), and despite the Court directing

Suffolk County to confirm all video had been produced, *see* Dkt. No. 104 (order dated Sep. 28, 2017), Suffolk County did not produce the McKenna-Donahue until 2025.[2]

Defendants also argue that the existence of the video cannot be shown using circumstantial evidence. But there is direct evidence that the video existed: the official incident report form made on the same day as the force incident. *See* Mot. Ex. 1, at 2. And beyond this, Plaintiff can (and plaintiffs often do) make such a showing using circumstantial evidence. *See Resnick v. Coulson*, 2019 WL 1434051, at *9 (E.D.N.Y. March 30, 2019) (adopting report recommending spoliation sanctions and finding proper reliance "on substantial circumstantial evidence to determine the existence and relevance of allegedly spoliated ESI"); *CAT3, LLC v. Black Lineage, Inc.*, 164 F.Supp.3d 488, 500 (S.D.N.Y. 2016) ("[C]ircumstantial evidence may be accorded equal weight with direct evidence, and standing alone may be sufficient to support even a determination that requires proof beyond a reasonable doubt." (internal references omitted)).

## II.   <u>Suffolk County Had a Duty to Preserve the Video Evidence.</u>

Plaintiff has shown by a preponderance of the evidence that Suffolk County had notice of future litigation and thus had a duty to preserve the footage. Suffolk County had notice for multiple independent reasons. *See* Mot. at 15–17.

---

[2] Defendants' cited cases do not support their arguments. In *Tri-County Motors Inc. v. Am. Suzuki Motor Corp*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007), there was not even a "scintilla of evidence" that a company's supposedly spoliated email evidence had ever existed, other than mere testimony that an employee used email with some frequency. To the contrary here, policy required that a handheld video recording be captured, and McKenna confirmed in a contemporaneous report that the video had been secured in an evidence locker. In *Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 570 (S.D.N.Y. 2013), the evidence at issue (photographs) indisputably existed; the issue instead was whether moving the photographs from their prior location constituted destruction of evidence relevant to the case. And in *Ungar v. City of New York*, 329 F.R.D. 8, 11 (E.D.N.Y. 2018), there similarly was no question that the video evidence in question once existed; rather, the issue was whether the video had already been overwritten by the time the City received notice of its duty to preserve. *Id.* at 14.

First, and critically, Suffolk County has itself demonstrated that it had notice of its duty to preserve the video by selectively preserving other surveillance videos (that were subject to the same deletion policy as the deleted surveillance video and subject to a much shorter deletion policy than the handheld video) depicting Mr. McClurkin directly before and directly after the force incident, as explained in the Motion. Defendants argue that these selectively preserved videos may not yet have been automatically overwritten when Mr. McClurkin's girlfriend complained about the force incident on July 13, 2015—more than 60 days after the May 8 incident. But Suffolk County's Rule 30(b)(6) witness confirmed that the videos would not have been available for that period without having been affirmatively preserved.

Such surveillance videos at Yaphank Correctional Facility were subject to a minimum 30-day retention period before they could be automatically overwritten, *see* Mot. at 6–7 (citing, *e.g.*, Mot. Ex. 9 (Corrections Directive 3.1.160), at 3; Mot. Ex. 11 (Zahn Dep. Tr.), at 36:25), and were generally retained for 30 to 35 days prior to being overwritten, *see* Opp. Ex. I (Dkt. No. 278.10) (Dep. Tr. of Douglas Paschke), at 35:20–22, 36:22–37:24. However, they were *not* retained for as long as 60 days, as Suffolk County's Rule 30(b)(6) deponent, Douglas Paschke, testified. *Id.* at 37:22–24 (Q: "Do any of them go back even as far as 60 days? A: In 2015, no."); *see also id.* at 36:20–23. As such, the selectively preserved videos would only have been available on July 13, 2015 if they had been affirmatively preserved pursuant to "Post Incident Review" procedures in which Correction Division Captains can request indefinite preservation of video onto a backup server on a discretionary basis, *see* Mot. at 7 (citing Mot. Ex. 9, at 4; Mot. Ex. 12 (Paschke Dep. Tr.), at 39:22–40:6), such as for the purposes of defending a potential lawsuit, *see id.* (citing Mot. Ex. 11 (Zahn Dep. Tr.), at 43:3–18, 46:4–17). Overall, Suffolk County demonstrated its notice of anticipated litigation well before either video would have been destroyed under policy.

Second, Mr. McClurkin made numerous complaints to the Suffolk County Sheriff's Office that gave notice of potential future litigation. The Sheriff's Office's records document that Mr. McClurkin complained about his shoulder to facility staff by as early as May 11, and told staff that he was "pressing charges on Corrections" and "alleging Ms. treatment [*sic*] at the facility" by May 18 and 19, 2015. *See* Mot. at 8–9 (citing Mot. Exs. 23–29). Defendants' argument that Mr. McClurkin cannot point to any evidence of such complaints is false; Mr. McClurkin cited *Suffolk County's own documentation* produced in discovery in which facility staff documented Mr. McClurkin's complaints that his shoulder had been dislocated and specifically making clear that he was seeking legal action. *See id.* The complaints clearly triggered the duty to preserve. Moreover, as Mr. McClurkin has repeatedly maintained prior to commencing this action and throughout this litigation, he also filed grievances, including a grievance on or before May 11, 2015. *See* Mot. at 8 (citing Dkt. No. 1; Mot. Ex. 13 (McClurkin Dep. Tr.) at 41:2–5, 110:25–111:6; Mot. Ex. 15 (Mr. McClurkin told investigators on July 16, 2015 that he had made grievances)); *see also* Dkt. No. 279.1 (McClurkin Decl.). Without more, this triggered the duty to preserve. *See Vega v. Broome Cnty.*, 2023 WL 6318919, at *7–8 (N.D.N.Y. Sept. 28, 2023); *Stanbro v. Westchester Cnty. Health Care Corp.*, 2021 WL 3863396, at *13 (S.D.N.Y. Aug. 27, 2021).

Third, the force incident itself and Mr. McClurkin's injury resulting from the incident also triggered the duty to preserve for the reasons stated in the Motion. *See* Mot. at 16. Defendants argue that Mr. McClurkin's shoulder injury was "known only to the Peconic medical staff" and would not have triggered a duty to preserve "considering privacy rights under HIPAA," Opp. at 6—a position they do not further explain or support with any citations. This is false. Suffolk County was well aware of Mr. McClurkin's injury. Following the May 8 force incident, Mr. McClurkin made numerous complaints to the Riverhead Correctional Facility medical staff of his

8

right arm shoulder pain and dislocation. *See* Mot. Exs. 23, 25, 26. He was given a sling by facility medical staff following an X-ray, and facility staff sent him to Peconic Bay Medical Center on May 15, 2015. *See* Mot. Ex. 31, at 5. The hospital then confirmed on May 15, 2015, that Mr. McClurkin's shoulder had been dislocated, and a closed reduction was performed under general anesthesia on May 16, 2015. *See* Mot. at 4 (citing Mot. Ex. 8, at 3). Mr. McClurkin returned to Riverhead Correctional Facility on May 16, and facility medical staff documented that Peconic Bay Medical Center had performed a closed reduction for Mr. McClurkin's right shoulder dislocation. *See* Ex. 1 (Attachment #32-38). As such, Suffolk County had notice of Mr. McClurkin's shoulder dislocation following Defendants' use of force, which further triggered the duty to preserve. *See Stanbro*, 2021 WL 3863396, at *13.

### III. Suffolk County Did Not Take Reasonable Steps to Preserve the Video Evidence.

#### A. Defendants Have Not Shown Any Steps Taken To Preserve the Videos After Receiving Notice of Potential Future Litigation.

As detailed *supra* and in the Motion, Suffolk County had notice of potential future litigation from several independent events: as a result of the force incident itself on May 8, 2015; within the few days after the incident when Mr. McClurkin made a grievance; by May 16, 2015 when facility medical staff documented the closed reduction Mr. McClurkin received for his dislocated shoulder; and, at the very least, by May 18 and 19 when Mr. McClurkin expressly told facility staff, who documented the fact that he was pressing charges and alleging mistreatment. *See supra* p. 7–9.

Despite this early notice, Defendants have not shown any reasonable and timely steps taken to preserve the videos prior to a litigation hold issued on November 20, 2015, more than six months after the excessive force incident. *See* Mot. at 8, 17. For instance, Suffolk County did not suspend its overhead surveillance video destruction policy (though, tellingly, it did so for other overhead surveillance videos of Mr. McClurkin before and after the force incident). *See Castro*,

9

2023 WL 5371311, at *10.  Suffolk County similarly failed to preserve the handheld video, which was subject to a minimum three-year retention requirement under the Sheriff's Office's policy.  *See* Mot. at 18.  As such, Suffolk County failed to take reasonable steps to preserve the videos, *see Vega*, 2023 WL 6318919, at *10, and Defendants' argument that there was no obligation to preserve the videos fails.

> **B.**    **The "Culpable State of Mind" Standard is Not Part of the Spoliation Analysis.**

Defendants argue that Plaintiff must show the videos were destroyed with "a culpable state of mind."  *See, e.g.*, Opp. at 14, 17–18.  But as Defendants themselves acknowledge, the "culpable state of mind" standard is not part of the spoliation inquiry for electronically stored information ("ESI").  *See* Opp. at 8 ("The 2015 Amendment to Rule 37(e)(2) abrogated the lesser 'culpable state of mind' standard.").  While historically, the standard for spoliation included a determination of whether records were destroyed with a culpable state of mind, this changed after December 1, 2015, when Federal Rule of Civil Procedure 37(e) was amended.  *See Stanbro*, 2021 WL 3863396, at *4–5.  This 2015 amendment replaced the "culpable state of mind" element with an "intent to deprive" requirement for the availability of severe sanctions under Rule 37(e)(2) where ESI is at issue.  *See id.* at *9; *Vega*, 2023 WL 6318919, at *5; *Ungar*, 329 F.R.D. at 13, *aff'd* 2022 WL 10219749, at *3 (2d Cir. 2022).  The Second Circuit case that Defendants cite describing the "culpable state of mind" standard, *ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, concerned physical evidence, not ESI, which is governed by a different standard.  144 F.4th 360, 374 (2d Cir. 2025) (concerning shredding physical documents).

**IV.    There is No Replacement for the Spoliated Video Evidence.**

Defendants do not dispute that the video evidence cannot be restored, but argue that it can be replaced through "voluminous discovery."  This is not so.  *See, e.g., Hughes v. City of New York*,

2021 WL 4295209, at *13 (S.D.N.Y. Sep. 21, 2021).  Defendants' references to self-serving narratives in the incident report, self-serving officer testimony, and after-the-fact medical records are no substitute for objective video evidence of the excessive force incident itself, and they cannot point to any support for such a proposition.[3]  "Testimony itself . . . cannot be deemed equivalent" because "[i]t is the [video] evidence that would presumably demonstrate the accuracy (or inaccuracy) of any witness testimony, and that would afford . . . the means to challenge the witnesses' credibility."  *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *12 (S.D.N.Y. Mar. 12, 2018).  As such, the video evidence cannot be restored or replaced.

**V.    Suffolk County's Conduct Must be Imputed to Defendants.**

Suffolk County's failure to preserve the video must be imputed to Defendants because their interests are "sufficiently aligned and closely interrelated in this action," as courts in this Circuit routinely find in Section 1983 cases against corrections officers.  *Castro*, 2023 WL 5371311, at *6 (references omitted) (imputing DOC's control over handheld and surveillance video to defendant officers); *see also Vega*, 2023 WL 6318919, at *9 (imputing county correctional facility's control over video to corrections officers who participated in a "SERT shakedown").

Defendants argue they had no direct control over the videos and no involvement in video preservation, but courts regularly impute the conduct of correctional facilities to officers under these circumstances.  *See, e.g.*, *Milton v. Rehman*, 2025 WL 2625966, at *13 (S.D.N.Y. July 31, 2025) (imputing conduct where officers were not responsible for loss of evidence), *rep. & rec. adopted*, 2025 WL 2624533 (Sep. 11, 2025); *Castro*, 2023 WL 5371311, at *7.  Failure to do so "would lead to the absurd result that a … correctional facility could wrongly destroy any piece of

---

[3] Moreover, Defendants' argument that such evidence is not "inadmissible," *see* Opp. at 21, is wholly irrelevant to the inquiry of whether the video evidence can be restored or replaced.

evidence in its control with near-zero risk of consequence in prisoner suits, since DOCCS cannot be sued for damages in Section 1983 cases, nor can it be held vicariously liable for the torts of its employees." *Stanbro*, 2021 WL 3863396, at *6 (internal references omitted).

The rule permitting imputation is premised on the "sufficiently close relationship" between correctional departments and individual officers. *Ocasio v. City of Canandaigua*, 2025 WL 1064721, at *5 (W.D.N.Y. Apr. 9, 2025). To find such a relationship, some courts look to factors such as: "(1) who employed the officer defendant; (2) who trained the officer defendant; (3) who represented the officer defendant; (4) who controls the evidence introduced in the officer defendant's favor; (5) whether the third-party indemnifies the officer defendant; and (6) whether a settlement is subject to approval by the third-party." *Castro*, 2023 WL 5371311, at *6.

Here, these factors—consistent with rulings of courts across this Circuit—require the finding of such a relationship. With respect to the first and second factors, the Suffolk County Sheriff's Office employed and trained both Defendants. *See generally* Opp. Ex. K (Dkt. No. 278.12) (Maiorino Dep. Tr.), at 75:7–22; Opp. Ex. L (Dkt. No. 278.13) (Sitler Dep. Tr.), at 55:11–13. As to the third factor, Defendants are both represented by an attorney at the Suffolk County Department of Law, who also jointly represented Suffolk County until the parties recently agreed to the voluntary dismissal of that defendant. *See Castro*, 2023 WL 5371311, at *6 (imputing conduct where defendants' attorney from the Law Department also represented DOC before the court substituted the City of New York as a defendant, and also represented the City of New York before it was dismissed from the case); *Milton*, 2025 WL 2625966, at *13.

Fourth, Suffolk County controls the evidence in Defendants' favor. Counsel for Defendants has produced officers and other witnesses for deposition and has produced document discovery, including but not limited to Sheriff's Office policies, Yaphank Correctional Facility surveillance

12

video of events surrounding the May 8, 2015 force incident, and a Sheriff's Office Internal Affairs Bureau investigative report.  At the Court's direction, counsel even produced an affidavit from a sergeant describing efforts to show and produce video footage to Mr. McClurkin.  *See* Dkt. No. 106; *see generally Castro*, 2023 WL 5371311, at *6 (the Law Department, which represented defendant officers, "produced a declaration from a DOC officer about the possible deletion of the video").  Fifth and sixth, Defendants are likely entitled to indemnification if Mr. McClurkin succeeds, *see Castro*, 2023 WL 5371311, at *6 (citing N.Y. Public Officers Law § 18(4)(a); N.Y. Gen. Mun. Law §50-k(3)), and thus any settlement is likely subject to third-party approval.

Spoliation sanctions here would be "felt most acutely" by Suffolk County, and imputation "would therefore serve prophylactic, punitive and remedial purposes."  *Id.* at *7.

## VI.    The Loss of The Videos Prejudices Mr. McClurkin.

Defendants argue that Plaintiff's "prejudice argument assumes the video would have been favorable to him," and argue, without any support, that the circumstances here are insufficient for finding prejudice.  To the extent this argument seeks to require Plaintiff to prove the contents of the videos, it is untenable and would undermine the purpose of spoliation sanctions.  Indeed, the Second Circuit has found that "holding the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference and would allow parties who have intentionally destroyed evidence to profit from that destruction."  *Castro*, 2023 WL 5371311, at *10 (quoting *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)); *see also Ocasio*, 2025 WL 1064721, at *6 ("[I]t would be unfair to require affirmative proof as to whether the evidence would have been advantageous to the movant as a predicate to subsection (e)(1) sanctions." (references omitted)).

Here, Mr. McClurkin has offered more than sufficient evidence that the loss of the video prejudices him.  The videos would show the force incident itself, as well as Mr. McClurkin's

13

physical state following the incident.  This evidence is "of obvious importance to his claims" where officers did not document any injuries to Mr. McClurkin in the incident report form, but Mr. McClurkin made numerous complaints about a shoulder injury following the incident and ultimately received a closed reduction under general anesthesia to treat his dislocated shoulder. *See Castro*, 2023 WL 5371311, at *11 (similar circumstances).  The lost video would have shown the use of force and the immediate physical effects of such force, and would thus be helpful to Mr. McClurkin's claims.  *See id.*  As such, the spoliation has prejudiced Mr. McClurkin in this action.

Defendants further argue that Plaintiff must show an intent to deprive before sanctions can be authorized precluding officer testimony concerning what the spoliated video would have shown and before allowing presentation of evidence and argument to the jury concerning the spoliation.[4] This is not correct under the law.  Both sanctions are expressly contemplated by the Advisory Committee's Note to the 2015 amendment to Rule 37(e) as a way of curing prejudice.  *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Courts, including this Court, regularly authorize these sanctions upon a showing of prejudice to "provide the jury with context for [the] evidentiary imbalance" resulting from the spoliation, *Ocasio*, 2025 WL 1064721, at *10 (cleaned up); *see also* Mot. Ex. 19, and to prevent a party from benefiting from the spoliation of objective evidence by substituting their own self-serving narratives of what would have been depicted, *see Lokai Holdings*, 2018 WL 1512055, at *17.  The sanctions are necessary here for these purposes.

---

[4] Precluding Defendants' witnesses from testifying about what the *video* would show is not "tantamount to a default judgment" that would result in "wholesale preclusion of officer testimony," as Defendants argue. This remedy does not, for instance, prevent officers from testifying about their firsthand recollection of the force incident.

For the reasons explained in the Motion, Mr. McClurkin is also entitled to reasonable attorney's fees incurred to uncover spoliated evidence and move for sanctions, *see* Mot. at 20, and Defendants do not dispute this.

**VII.**     **Mr. McClurkin is Entitled to an Adverse Inference at Trial.**

Defendants do not meaningfully counter Mr. McClurkin's arguments that an adverse inference is warranted because Suffolk County intended to deprive Mr. McClurkin of video evidence. They argue that circumstantial evidence is insufficient to meet this standard, but this is not supported by the law.[5] In fact, the Second Circuit has found that a showing of such intent "frequently depends upon circumstantial evidence." *Hoffer v. Tellone*, 128 F.4th 433, 440 (2d Cir. 2025); *see also Oakley v. MSG Networks, Inc.*, 792 F. Supp. 3d 377, 390 (S.D.N.Y. 2025).

For the reasons explained in the Motion, Suffolk County's intent to deprive Mr. McClurkin is clear from *inter alia* its failure to take any steps to preserve the key video evidence, its selective preservation of other videos, and its nine-year concealment in discovery of the McKenna-Donahue Statement. *See* Mot. at 20–22.

### CONCLUSION

For the reasons set forth herein and in the Motion, the Court should grant Mr. McClurkin's motion for spoliation sanctions.

---

[5] Defendants cited *McCoy v. TJX Cos., Inc.*, 2024 WL 4212194, at *2 (2d Cir. Sep. 17, 2024) (summary order), which did not make findings concerning the proof required to show intent to deprive. They also cited *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575 (S.D.N.Y. 2013), but that was a pre-2015 case that did not apply the "intent to deprive" standard.

Dated: New York, NY
       July 27, 2026

Respectfully submitted,

COVINGTON & BURLING LLP

*/s/ Seema Sabu*

Seema Sabu
Kyle Chow
Destinee Haller
30 Hudson Yards
New York, NY 10001

*Attorneys for Plaintiff*

16